UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LANGFORD,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | NO. CV 11-4987 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

  Plaintiff Charles Langford filed this action on June 20, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on July 18, 2011. (Dkt. Nos. 7, 9.) On February 24, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

  Having reviewed the entire file, the court remands this matter to the Commissioner for proceedings consistent with this Opinion.

# I.

## PROCEDURAL BACKGROUND

On February 29, 2008, Langford filed an application for supplemental security income benefits, alleging a disability onset date of May 1, 2003.[1] AR 21, 145-51. The application was denied initially and on reconsideration. AR 21, 71-72. Langford requested a hearing before an Administrative Law Judge ("ALJ"). AR 104. On April 23, 2010, the ALJ conducted a hearing at which Langford, a medical expert, and a vocational expert ("VE") testified. AR 39-66. On May 18, 2010, the ALJ issued a decision denying benefits. AR 18-31. On April 13, 2011, the Appeals Council denied the request for review. AR 1-4. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

---

[1] Langford filed a prior application for supplemental security income benefits on February 14, 2007, alleging a disability onset date of May 1, 2003. Administrative Record ("AR") 67, 170; JS 2. The application was denied initially and on reconsideration due to insufficient medical evidence. AR 67, 69. Langford failed to attend a consultative examination and his whereabouts were unknown. AR 68, 70. There was no further appeal. JS 2.

2

evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found Langford has the severe impairments of hepatitis C infection; HIV infection; neuropathy; depressive disorder, not otherwise specified; and polysubstance abuse, in remission. AR 23. Langford has the residual functional capacity ("RFC") to perform light work with restrictions. AR 25. He can lift/carry 20 pounds occasionally, 10 pounds frequently, and sit, stand and walk 8 hours in an 8 hour day. *Id.* He is precluded from working at heights, near open pools of water, or around heavy moving machinery. *Id.* He is limited to the performance of moderately complex tasks with up to 4 to 5 step instructions. *Id.* He is "limited to a relatively habituated workplace setting with limited or no contact with the public." *Id.* He must be afforded the use of a cane on an as-needed basis. *Id.* Langford has no past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform, such as small products assembler and electronics worker. AR 29-30.

### C. Treating Psychiatrist

Langford contends the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. Pariewski.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following:  (1) length of the treatment relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion.  *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6).  "When there is conflicting medical evidence, the Secretary must determine credibility and

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."  20 C.F.R. § 404.1527(d)(2)(i).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."  20 C.F.R. § 404.1527(d)(2)(ii).

4

resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

In response to a request from Health Advocates, Dr. Pariewski completed a Mental Residual Functional Capacity Questionnaire regarding Langford on November 18, 2009. AR 826-31. Dr. Pariewski stated she had seen Langford monthly since August 27, 2008. AR 826. She diagnosed Langford with Major Depressive Disorder, Recurrent, Moderate, with a "guarded" prognosis. *Id.* His highest Global Assessment of Functioning ("GAF") over the past year was 60.[4] *Id.* She opined that Langford had the following symptoms: anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, emotional lability, emotional withdrawal or isolation, generalized persistent anxiety, mood disturbance, persistent disturbances of mood or affect, and sleep disturbance. AR 827-28. She found mild limitations in understanding and memory, and mild to moderate limitations in sustained concentration and persistence, social interaction, and adaptation. AR 829-30. She indicated that "even a minimal increase in mental demands or change in the environment would be predicted to cause [Langford] to decompensate." AR 831. Langford had a "current history of 1 or more years' inability to function outside a h[i]ghly supportive living arrangement with an indication of continued need for such an arrangement."[5] *Id.*

Dr. Pariewski opined that Langford would require unscheduled breaks during an 8 hour workday due to pain in his lower extremities, and she estimated

---

[4] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (Text Revision) (4th ed. 2000) ("DSM-IV-TR 34").

[5] Langford completed a residential alcohol and drug treatment program in November 2008 and was residing in a sober living facility as of February 2010. AR 834.

5

1  Langford would be absent from work as a result of his impairments more than 4
2  days per month. AR 830.
3       Contrary to Langford's contention, the ALJ specifically cited Dr. Pariewski's
4  opinion in her decision. AR 28 (citing Exh. 51F). The ALJ stated:

> The RFC determination adequately considers those symptoms reasonably credible and consistent with the objective medical evidence, as translated into the limitations assessed. I rely on medical expert, Dr. Nafoosi's assessment of physical limitations, and included additional mental limitations, reasonably consistent with those credible mental symptoms reflected in the medical record. (Exhibit 41F; Exhibit 51F).

AR 28.[6]

     The ALJ also relied on the opinion of the examining psychiatrist, Dr. Bagner, who found zero to mild limitations in maintaining concentration and attention and completing simple tasks, mild limitations in interacting with supervisors, peers and the public, and completing complex tasks, and mild to moderate limitations in handling normal work stress and completing a normal workweek without interruption. AR 24, 658. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 631.

     The Commissioner argues that the RFC was consistent with Dr. Pariewski's opinion. JS 7. However, he concedes that the ALJ did not explain why she rejected Dr. Pariewski's opinion regarding Langford's likely need to be

---

[6] Exhibit 41F contains the psychiatric review by Dr. Hood, who found moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. AR 685. A non-examining physician's opinion may serve as substantial evidence when, as here, it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas*, 278 F.3d at 957.

6

absent from work. JS 9. He argues that "the likely reason was that the opinion was not based on any objective facts or findings, but based on [Langford's] subjective complaints," and because the ALJ "rejected such opinions from Dr. Moe." *Id.* He further contends that any error was harmless. *Id.*

This court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). A court "may not affirm the ALJ on a ground upon which he did not rely."[7] *Orn*, 495 F.3d at 630. This court declines to speculate on the ALJ's "likely" reasons for rejecting Dr. Pariewski's estimate that Langford would be absent more than four days per month due to his limitations.[8]

Remand is appropriate so the ALJ may properly consider Dr. Pariewski's opinion in its entirety.

### D. Non-Examining Medical Expert Opinion

Langford claims the ALJ did not properly rely on the opinion of Dr. Nafoosi, a non-examining medical expert.

Opinions of a non-examining, testifying medical expert "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews*, 53 F.3d at 1041.

Dr. Nafoosi concluded Langford is infected with the Hepatitis C virus and the HIV virus, and suffers from a depressive disorder. AR 51-52. Langford can lift up to 20 pounds occasionally and 10 pounds frequently. AR 52. He can walk,

---

[7] The ALJ rejected Dr. Moe's opinion that Langford would be required to miss more than four days a month due to his physical impairments. AR 29. Dr. Pariewski's opinion regarding missing four days a month arguably relates to his mental limitations. AR 830. Thus, the ALJ's reasons for rejecting Dr. Moe's opinion regarding absences do not necessarily explain why she rejected Dr. Pariewski's opinion regarding absences.

[8] The VE testified there were no jobs for an individual who would miss four days of work per month due to physical or mental impairments. AR 61, 63.

stand, or sit without restrictions. *Id.* Dr. Nafoosi saw no objective evidence – such as fever, involuntary weight loss, glucose intolerance, decreased sensation on physical examination, decreased pinprick sensation, or loss of deep tendon reflexes – to support Langford's documented symptoms of fatigue, pain, nausea, and neuropathy. AR 56. Upon questioning by Langford's attorney, Dr. Nafoosi reviewed the medical records from Northeast Valley Health Corporation, where Langford received his primary care. AR 57, 756-99. Dr. Nafoosi noticed a note under "neuro" stating Langford was unable to feel sharp sensation to the distal lower left extremity; tandem gait. AR 58, 765. Dr. Nafoosi revised his assessment to include no work at heights, around heavy moving machinery, or open pools of water. AR 58.

Contrary to Langford's argument, the ALJ properly gave "great weight" to Dr. Nafoosi's opinion. The Commissioner correctly notes that Langford's arguments regarding Dr. Nafoosi's testimony "were either corrected" or "immaterial to the validity of the decision." JS 13. Langford argues Dr. Nafoosi's review was not comprehensive because he was not aware Dr. Moe completed a RFC questionnaire which reflected that Langford could not tolerate normal work stress due to depression and chronic pain (rather than due solely to depression). Dr. Nafoosi reviewed Dr. Moe's RFC assessment at the hearing, considered his finding that Langford could not tolerate normal work stress due to chronic pain and depression, and explained pain was a subjective factor that was not supported by objective evidence in the record. AR 54.

Langford argues Dr. Nafoosi failed to identify what functional limitations, if any, resulted from his infection with the hepatitis C virus and the HIV virus. *Id.* Dr. Nafoosi explained Langford's functional limitations and accounted for them in his RFC. AR 52, 58. Dr. Nafoosi testified he did not see evidence in the record of hospitalizations or opportunistic infections due to Langford's HIV. AR 54. The record lacks evidence of hospitalizations, treatment, or symptoms of HIV, and the

8

condition was often noted as stable. *See, e.g.,* AR 488-501, 638, 692, 700, 702, 760, 762, 776, 778, 847, 849.

Finally, Langford argues Dr. Nafoosi ignored objective evidence of involuntary weight loss, such as constant diarrhea and "significant weight loss" in 2008-2009. AR 54. Dr. Nafoosi testified he did not see evidence of significant or involuntary weight loss in the record. AR 54, 56. In 2008-2009, Langford's weight gradually changed from a high of 222 pounds in March 2008 to a low of 196 pounds in November 2009.[9] AR 691, 693, 695, 697, 699, 701, 703, 705, 707, 709, 759, 761, 763, 767, 769, 771, 775, 840, 842, 846, 848, 852. A few months later, in February 2010, he weighed 191 pounds. AR 838. In comparison, in March 2005, he weighed 170 pounds. AR 600. As the ALJ noted, the record contains evidence that Langford was trying to lose weight as of June 2008. AR 27, 699.

The ALJ did not err.[10]

### E. The ALJ's RFC

Langford argues that the ALJ's RFC was not supported by substantial evidence.

The RFC measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2).

Because this matter is being remanded for consideration of Dr. Pariewski's opinion, it is unnecessary to address this contention.

---

[9] Langford is approximately 6 feet 2 inches. *See, e.g.* AR 699.

[10] Langford argues Dr. Nafoosi ignored medical records indicating leg weakness that required use of a cane. The ALJ included use of a cane in a hypothetical to the VE and in Langford's RFC assessment. AR 23, 25, 28-29, 47, 64.

9

## IV.

## **ORDER**

IT IS HEREBY ORDERED that this matter is remanded for further proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 31, 2012

_____
ALICIA G. ROSENBERG
United States Magistrate Judge